Harold E. Ryman and Marion J. Ryman, Husband and Wife v. Commissioner. John D. Thompson and Suzette D. Thompson, Husband and Wife v. Commissioner.
Ryman v. Commissioner
Docket Nos. 37408, 37409.
United States Tax Court
1953 Tax Ct. Memo LEXIS 111; 12 T.C.M. (CCH) 1093; T.C.M. (RIA) 53390; September 21, 1953
John C. Ristine, Esq., 920 Southern Building, Washington, D.C., for the petitioners. A. E. Carpens, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in income tax for the year 1944 as follows: Harold E. Ryman and Marion J.
Ryman
$861.07
John D. Thompson and Suzette
D. Thompson
872.93
The sole contested issue is whether the gain realized upon the sale in 1944 of Davis Shores lots is taxable as ordinary income. The stipulated facts are found accordingly. Findings of Fact The petitioners and their respective wives are individual taxpayers residing at St. Augustine, Florida. Their respective joint tax returns for the year 1944 were filed with *112 the collector of internal revenue at Jacksonville, Florida. Harold E. Ryman and John D. Thompson, hereinafter referred to as the petitioners, since October 1925 have operated a real estate and insurance business in the City of St. Augustine, Florida, as equal partners under the name of Thompson-Ryman Realty Company. The business was operated under an oral agreement until September 30, 1942, when the petitioners entered into a written agreement containing, inter alia, the following provision: "FIRST: That the only business held, owned and operated by them, made the subject matter of this contract, is the business conducted by them under the partnership name of Thompson-Ryman Realty Co., dealing with (a) real estate sales, rentals, and life insurance, (said life insurance agency held in the name of J. D. Thompson, but actually a part of the foregoing partnership assets or business) and (b) with First Insurance, Casualty Insurance and Fidelity and Surety Bonds; and all matters pertaining to or connected with said business." The partnership rented office space but owned its office equipment. The petitioners have been licensed real estate brokers since 1925 and advertise and hold *113 themselves out as real estate brokers. During the period of their activities from 1925 they have dealt with a substantial number of buyers of real estate and are well known in St. Augustine, Florida. A partnership return was filed for the taxable year 1944 which was prepared by Lloyd Clark, a public accountant. In preparing the partnership return for 1944, the accountant took the information on the Davis Shores lots and other land sales from the books and put it on a Form 1065. He then put the information on the operations of the partnership on another Form 1065 and consolidated the information on the two forms on to one Form 1065, which was filed with the collector of internal revenue. The partnership listed the business as "Real Estate & Insurance Agency" and under the line provided for answering the question as to the nature of the organization stated, "Partnership & Joint Venture." The return was signed by petitioner John D. Thompson, as partner. The Davis Shores property involved in these proceedings consisted of 1,062 lots in a subdivision which had been subdivided prior to May 8, 1935. There were 810 lots with clear title and 252 lots with clouded title. Davis Shores, *114 Inc., was incorporated on April 20, 1935. The entire capital stock consisted of 30 shares of which George D. Reddington held 12 shares and the petitioners 9 shares each. The charter of Davis Shores, Inc., provided that the nature of the business to be transacted was - * * * "to purchase or otherwise acquire and deal in real and personal property and any interest therein; * * * to survey, plat, sub-divide, sell, improve, manage, develop, lease, mortgage, dispose of, turn to account or otherwise deal with all or any part of any real estate which may be acquired by the corporation., * * *." On May 8, 1935, the corporation acquired the Davis Shores properties. The lots were of varying size. There were a few graded streets and curbing was in place in some areas. Only one street was paved and that was the United States highway. There were a few sewer lines and a few sidewalks. The city had also extended the water lines. On January 20, 1941, George D. Reddington died and the petitioners jointly acquired from his estate the 12 shares of the capital stock of Davis Shores, Inc. On April 30, 1941, Davis Shores, Inc., was dissolved and its assets, including the Davis Shores property consisting *115 of an estimated 746 lots, were distributed to the petitioners in exchange for the 30 shares of its outstanding stock. A deed dated April 30, 1941, executed by Davis Shores, Inc., conveyed the property to Harold E. Ryman and John D. Thompson, the petitioners herein. A schedule of liquidation was included in the minutes of a special meeting of the stockholders of Davis Shores, Inc., held on April 30, 1941. A copy of such schedule was filed with the final income tax return of Davis Shores, Inc., for the period May 1, 1940, to April 30, 1941. On its final income tax return Davis Shores, Inc., returned a gross profit of $7,652.57. This was income returned from the sale of lots during the fiscal year ended April 30, 1941. During the period of the existence of Davis Shores, Inc., the Thompson-Ryman Realty Company was the exclusive sales agent for the lots owned by Davis Shores, Inc. During the period of the corporation's existence approximately 50 lots were sold or otherwise disposed of each year. The books and records of Davis Shores, Inc., were kept in the offices of the Thompson-Ryman Realty Company and the entries were made there. After the petitioners acquired the Davis Shores *116 properties the books were still kept in the same office. The petitioner, John D. Thompson, either made or supervised the day-to-day entries and the deposits were made in a separate bank account. The accountant went to the office at irregular intervals of from one to six months and consolidated the information kept by petitioners. The separate books and records pertaining to the Thompson-Ryman Realty Company were kept by John D. Thompson and were used by the accountant for the purpose of making up the tax returns. From May 1, 1941, through December 31, 1951, the petitioners made the following sales of Davis Shores lots: Number
Number
Total
of
of lots
consider-
Year
sales
sold
ation
May 1941-
December 1941
13
35
$ 4,828.58
1942
4
9
700.00
1943
6
9
2,550.00
1944
15
30
7,006.30
Subtotal
38
83
$ 15,084.88
1945
22
94
23,925.00
1946
19
74
23,690.00
1947
13
54
17,750.00
1948
20
63
34,748.75
1949
8
24
15,060.00
1950
35
107
53,991.43
1941
16
56
42,945.00
Total
171
555
$227,195.06
The 1944 return of the Thompson-Ryman Realty Company shows real estate sales as follows: Date acquired
Description
Gross price
Gain
5- 1-41
Lots - Davis Shores
$ 7,006.30
$6,150.87
2- 7-41
Lots - Surfside
2,497.06
2,063.08
4-30-41
WPB - Property
15,000.00
8,946.68
1942
Acreage
642.00
381.17
3- 9-35
Lot St. Augustine
6,000.00
3,965.98
(Installment Sale - Collected, $1,500)
Total gross sales price
$31,145.36
Total profit on real estate sales
$21,405.78
*117 Ordinary net income in the amount of $13,169.51 from other activities was shown on the 1944 partnership return. The petitioners' shares of income and credit shown on the partnership return for 1944 of the Thompson-Ryman Realty Company were as follows: Ordinary
Capital
income
gain
John D. Thompson
$ 7,584.75
$4,633.33
Harold E. Ryman
5,584.76
4,633.33
Total
$13,169.51
$9,266.66
Petitioners John D. Thompson and wife, Suzette D. Thompson, on their 1944 income tax return reported income as follows: Dividends and interest
$ 187.50
Income from rents and royalties
(107.18)
Net capital gain
4,633.33
Income from Thompson-Ryman
Realty Company (a partner-
ship)
7,584.75
Total
$12,298.40
Petitioners Harold E. Ryman and wife, Marion J. Ryman, on their 1944 income tax return reported income as follows: Income from United States Navy
$ 540.00
Dividends and interest
524.28
Net capital gain
4,851.50
Income from Thompson-Ryman
Realty Company (a partner-
ship)
5,584.76
Total
$11,500.54
During the taxable year 1944 the petitioners were engaged in the real estate business and the Davis Shores lots sold by *118 them were property held by them primarily for sale to customers in the ordinary course of their trade or business. Opinion LEMIRE, Judge: The sole question presented is whether the gains realized from the sale of certain real estate known as the Davis Shores lots, in the taxable year 1944, under the facts set forth in our findings of fact are taxable as ordinary income or as profits from the sale of capital assets. The issue is one of fact and is to be resolved upon an appraisal of all the pertinent facts and circumstances presented by the particular case under review. Reynolds v. Commissioner, 155 Fed. (2d) 620; Van Suetendael v. Commissioner, 152 Fed. (2d) 654; South Texas Properties Co., 16 T.C. 1003. The respondent contends that the facts revealed by this record clearly establish that the Davis Shores lots were property held by the petitioners for sale to customers in the ordinary course of their trade or business and are not capital assets as defined by section 117 (a) of the Internal Revenue Code. Viewing the pertinent facts in the light of their relative importance, we are convinced that the properties in question *119 were not capital assets, and the profit realized from the sale in the taxable year 1944 constitutes ordinary income. Without reiterating all of the facts set forth in our findings, we will summarize those factors which we think support the conclusion that the petitioners were dealers and not mere investors with respect to the real property in question. Since 1925 the petitioners have been licensed real estate brokers conducting a partnership under the name of the Thompson-Ryman Realty Company. The principal business of the partnership was operating a real estate and insurance agency. In 1935 the petitioners and one Reddington formed a corporation to acquire 1,062 lots of varying sizes in a subdivision which had been divided by prior owners. The corporation was authorized to deal generally in real estate. Between 1935 and 1941, the corporation sold several hundred of these properties, known as the Davis Shores lots, returning the profit realized as ordinary income. During such period the partnership acted as exclusive sales agent for the corporation on a commission basis. In 1941 Reddington died and the petitioners jointly acquired the shares of the capital stock of the corporation *120 from his estate. In 1941 the petitioners, owning all of the stock of the corporation, caused the remaining lots to be deeded by the corporation to themselves jointly and the corporation was dissolved. While the corporation was in existence its books and records were kept at the office of the partnership and the entries in the books were made by an accountant. After the dissolution of the corporation the same procedure was followed throughout the succeeding years, including the taxable year involved. After the Davis Shores lots were conveyed by the corporation to the petitioners, sales of the lots continued. During the period May 1941 through the calendar year 1944, a total of 83 lots was sold, 30 of which were sold in the taxable year 1944. When the properties were acquired by the corporation, a few sidewalks and curbs had been laid and the water mains had been extended. Neither the corporation nor the petitioners made additional improvements. The lots were not advertised for sale by either the corporation or the petitioners. The fact that the petitioners followed the same method pursued by the corporation and continued to make frequent sales of the lots, in our opinion, serves *121 to demonstrate the status of petitioners as dealers. In support of their contention that the lots in question were capital assets, the petitioners point to their partnership agreement indicating that the Thompson-Ryman Realty Company conducted only a real estate and insurance agency; that separate books and records were kept covering the partnership business and the activities in connection with the Davis Shores lots; and that the petitioners did not advertise or engage in sales activity with respect to the lots. Petitioners seek to explain away the reporting on the partnership return filed by the Thompson-Ryman Realty Company of the profits realized from the sale of the Davis Shores lots as an error of the accountant who made out the return. We think the evidence upon which the petitioners rely, when viewed in the light of its relative importance to all of the facts, does not establish that the petitioners held the Davis Shores lots as investors. The fact that the partnership agreement refers only to the character of the business conducted by the partnership, carried on under the name of the Thompson-Ryman Realty Company, and makes no reference to the Davis Shores lots is without *122 significance. The petitioners could and, we think, did carry on two separate business activities. That the petitioners did not advertise or carry on sales activities with respect to the lots in question, while one of the factors we have taken into consideration, is of slight relative importance, since the petitioners were well known as licensed real estate brokers and the owners of the lots, and the two businesses were conducted from the same office. The petitioners did advertise the Thompson-Ryman Realty Company and actively engaged in selling properties for other owners. The fact that the profits realized from the sale of the Davis Shores lots were reported on the partnership return, filed by Thompson-Ryman Realty Company, is likewise without significance. That return stated the nature of the organization as "Partnership & Joint Venture" and, we think, the latter term was intended to cover the activities of the petitioners in connection with the sale of the Davis Shores lots. Giving due consideration to all pertinent facts and circumstances and their relative importance, we hold that the Davis Shores lots were property held primarily for sale to customers in the ordinary course *123 of petitioners' trade or business. Therefore, we sustain the respondent's determination that the profits realized from the sale of such lots in the year 1944 are taxable as ordinary income. Decisions will be entered for the respondent.